UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GLORIA JOHNS-PRATT,               :          3:18-cv-01799 (VLB)
    Plaintiff,                :
                              :
v.                                :
                              :
BMW OF NORTH AMERICA, LLC         :
    Defendant.                :          April 21, 2020

MEMORANDUM OF DECISION
GRANTING DEFENDANT'S AMENDED MOTION TO DISMISS [ECF NO. 29]

Before the Court is the Defendant's Amended Motion to Dismiss Plaintiffs'
First Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to
State a Claim Upon Which Relief Can be Granted. [ECF No. 29]. For the reasons
that follow, the Court GRANTS the Defendant's Motion to Dismiss.

BACKGROUND

Plaintiffs Gloria Johns-Pratt, Ronald Rosa, and Stephen Christopher jointly
filed the instant action on November 1, 2018, asserting causes of action as to each
Plaintiff against Defendant BMW of North America, LLC and then-Defendant
Bavarian Motor Works for (1) breach of warranty pursuant to the Magnuson-Moss
Warranty Act, 15 U.S.C. § 2301, *et seq.* (MMWA), (2) breach of express warranty
pursuant to Conn. Gen. Stat. § 42a-2-313, (3) breach of implied warranty of
merchantability under Conn. Gen. Stat. § 42a-2-314, and (4) violation of the
Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, *et seq.*
(CUTPA). [ECF No. 1].

Defendants moved to dismiss Plaintiffs' Complaint on January 31, 2019, [ECF No. 21], prompting Plaintiffs to file a First Amended Complaint ("FAC"), [ECF No. 24], on February 21, 2019. In the FAC, Plaintiffs dropped Bavarian Motor Works, leaving BMW of North America, LLC as the sole Defendant. *Id.*

On March 7, 2019, Defendant moved to dismiss Plaintiffs' First Amended Complaint. [ECF No. 26]. In the alternative, Defendant moved to sever the Plaintiffs due to Plaintiffs not meeting "the standard for permissive joinder set forth in Rule 20." *Id.* at 30. The same day Defendant moved to stay discovery. [ECF No. 28]. The next day Defendant filed an amended motion to dismiss to correct an errant date in the Certificate of Service, [ECF No. 29], making this the operative motion to dismiss.

On August 30, 2019, the Court entered an Order stating that it would sever Plaintiffs Rosa and Christopher from the case on September 6, 2019, and invited Plaintiffs Rosa and Christopher to instead enter dismissals of their claims if they so chose. [ECF No. 42]. Plaintiffs Rosa and Christopher did so on September 6, 2019, [ECF No. 43], and they were terminated from the case on September 10, 2019. [ECF No. 44].

That same day, the Court denied the operative motion to dismiss and the motion to stay discovery as moot in light of Plaintiffs Rosa and Christopher's dismissal from the case. [ECF No. 45]. The Defendant then filed a motion for reconsideration, arguing that the motion to dismiss should still be operative against Plaintiff Johns-Pratt, especially in light of the Plaintiffs' argument in opposition to the motion to dismiss that their claims could be aggregated to satisfy

the jurisdictional threshold.  [ECF No. 48].  The Court agreed, granting Defendant's motion for reconsideration on September 17, 2019, reinstating Defendant's motion to dismiss against Plaintiff Johns-Pratt only, and granting the motion to stay discovery.  [ECF No. 50].

In factual allegations supporting Plaintiff's causes of action in the original complaint, Plaintiff alleged that on or about June 19, 2013, Plaintiff purchased a used 2010 BMW 750lxi from an unidentified "authorized dealer located in Connecticut," and soon after purchasing it discovered that it required her to add one quart of oil to the engine every 500 miles "throughout the warranty period and well before the Defendants' recommended oil change intervals."  [ECF No. 1 ¶¶ 11-12].  Plaintiff allegedly informed "an authorized dealer" on numerous occasions about the required oil additions and was told that the dealer would "monitor" the situation, that this situation was "normal," and that it did not warrant any repairs to Plaintiff's vehicle.  *Id.* ¶¶ 13-14.  Plaintiff alleged that eventually Plaintiff's dealer offered to replace the engine in Plaintiff's vehicle, but then informed Plaintiff that the replacement engine was backordered, and its availability was unknown.  *Id.* ¶ 16.

Plaintiffs alleged, in the original Complaint, that a certain BMW engine, the "N63," was installed in all three of the Plaintiffs' vehicles and was known to consume excessive amounts of oil.  *Id.* ¶¶ 36-37.  Plaintiffs alleged that "[s]ome owners and enthusiasts blame the oil consumption on BMW's decision to place the N63's twin turbochargers between the cylinder heads, and inside the engine V,

3

rather than outside of the engine V, away from sensitive components, where turbochargers are typically located." *Id.* ¶ 38*.*

In asserting their causes of action, Plaintiffs first stated that Defendants "failed to remedy the subject vehicles' oil consumption defect within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the subject vehicles," causing each Plaintiffs' "damages," and thereby committing a breach of warranty in violation of the MMWA. [ECF No. 1 at 16-17]. Next Plaintiffs asserted that they each "submitted their vehicles for warranty repairs," but "Defendants failed to comply with the terms of the express written warranty provided to each Plaintiff, by failing and/or refusing to repair the oil consumption defect under the vehicles' warranty." *Id.* at 18. Because of this Plaintiffs asserted that they "have suffered actual and consequential damages, . . . includ[ing] . . . the loss of the use and enjoyment of their vehicles, and a diminution in the value of the subject vehicles," and that Defendants therefore breached their express warranties to each Plaintiff under Conn. Gen. Stat. § 42a-2-313. [ECF No. 1 at 17-18]. Third, Plaintiffs asserted that "[a]n implied warranty that the subject vehicles were merchantable arose by operation of law as part of the purchase of the subject vehicles," and that "Defendants breached the implied warranty of merchantability in that the subject vehicles were not in merchantable condition when the Plaintiffs purchased them, or at any time thereafter, and the subject vehicles [we]re unfit for the ordinary purposes for which such vehicles are used," causing each Plaintiff "damages, including but not limited to incidental and consequential damages," in breach of

the implied warranty of merchantability under Conn. Gen. Stat. § 42a-2-314.  [ECF No. 1 at 19].  Finally, Plaintiffs asserted that Defendants violated CUTPA because (1) "Defendants' failure and refusal to repair the subject vehicles [was an] unfair and deceptive practice, (2) Defendants made fraudulent and/or negligent representations, (3) Defendants represented "the subject vehicles to be of good, merchantable quality, free of defects, when in fact they were not," and (4) Defendants failed "to reveal material facts including, but not limited to, the nature of the nonconformities and defects complained of herein."  [ECF No. 1 at 20].

In their Amended Complaint, Plaintiffs added allegations that Plaintiff Johns-Pratt purchased her vehicle for $55,714.45 and incurred approximately $2,100 in out-of-pocket expenses associated with her vehicle's "excessive engine oil consumption."  [ECF No. 24 ¶¶ 11, 17].

In the FAC, in a section titled "Factual Allegations Applicable to All Plaintiffs," Plaintiffs added allegations concerning Defendant's vehicle warranties, *id.* ¶¶ 36-41, added an allegation that Plaintiffs' vehicles excessive oil consumption could cause an engine to seize up resulting in a crash, *id.* ¶ 77, and added statute of limitations tolling allegations in addition to the fraudulent concealment tolling found in the original complaint, including tolling based on the discovery rule, *id.* ¶¶ 92-94, estoppel, *id.* ¶¶ 95-97, and class action tolling.  *Id.* ¶ 98.  The FAC also dropped the third cause of action concerning the implied warranty of merchantability.  *Id.*

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. . . ." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Subject matter jurisdiction is not waivable, and a lack of subject matter jurisdiction may be raised at any time, by a party or the court *sua sponte*. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."). If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

A "district court must take all uncontroverted facts in the complaint [ ] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings. . . ." *Id.* "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

In a case brought under the Magnuson-Moss Warrant Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, "[a] federal court does not have jurisdiction . . . 'if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.'" *Makuch v. Stephen Pontiac-Cadillac, Inc.*, No. 3:12-cv-886 (WWE), 2013 U.S. Dist. LEXIS 724, at *3 (D. Conn. Jan. 3, 2013) (quoting 15 U.S.C. § 2310(d)(3)(B)).

"[A] plaintiff invoking federal jurisdiction must demonstrate a reasonable probability that the amount-in-controversy requirement is satisfied," *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (citation omitted), but the Second Circuit "recognize[s] a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006). "A defendant may rebut that presumption by demonstrating 'to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums.'" *Id.*; *see also St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

"Pendent state law claims are not included in determining whether the value of 'all claims' reaches the jurisdictional threshold." *Makuch*, 2013 U.S. Dist. LEXIS 724, at *3 (citing *Jiminez v. Going Forward, Inc.*, 25 F. Supp. 2d 54, 55 (D. Conn. 1998)). "The text of the statute indicates that the $50,000 threshold also excludes interest." *Id.* (citing *Golden v. Gorno Bros.*, Inc., 410 F.3d 879, 883 (6th Cir. 2005)). "Finally, attorney's fees are excluded from the calculus." *Id.* (citing *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984)).

"Punitive damages, however, should be included in determining jurisdiction if they are available under applicable state law." *Id.* at 3-4 (citing *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298 (11th Cir. 1999)). "Under Connecticut law, punitive damages are available for a claim of breach of warranty if plaintiff alleges conduct that is 'done with a bad motive or with a reckless indifference to the

interests of others.'" *Id.* at \*4 (quoting *L.F. Pace & Sons, Inc. v. Travelers Indemn. Co.*, 9 Conn. App. 30, 48 (1986)).  In other words, punitive damages are only available when there exists "wanton and malicious injury, evil motive and violence, for punitive damages may be awarded only for outrageous conduct . . . ." *L. F. Pace & Sons*, 9 Conn. App. at 48; *see also Triangle Sheet Metal Works, Inc. v. Silver*, 154 Conn. 116, 127-29 (1966) (punitive damages not allowable even in case of deliberate theft of mechanical design trade secrets and trade secrets regarding financial details regarding costs, pricing, and bidding procedures that caused plaintiffs to be "severely damaged").  "Punitive damages in Connecticut are measured with regard to legal fees." *Makuch*, 2013 U.S. Dist. LEXIS 724, at \*4 (citing *Berry v. Loiseau*, 223 Conn. 786, 825 (1992) (recognizing rule that common law punitive damages are limited to litigation costs)).

Where the written warranties at issue are 'limited' (i.e., not 'full' within the meaning of MMWA § 2304) the measure of a plaintiff's damages is derived from the state law governing such breach of warranty claims.  *Pyskaty*, 856 F.3d at 223. Under Connecticut law, "the proper test for damages [in a breach of warranty case, is] the difference in value between the property had it been as represented and the property as it actually was." *Johnson v. Healy*, 176 Conn. 97, 106 (1978).

## ANALYSIS

Defendant argues that it is clear to a legal certainty that Plaintiff Johns-Pratt cannot meet the $50,000 jurisdictional threshold under the MMWA.  [ECF No. 27 at 6-10].  Defendant argues that the only actual damages Plaintiff alleges are $2,100 in out-of-pocket expenses used to add "one quart of oil every 500 miles throughout

the warranty period." *Id.* at 8 (quoting FAC ¶¶ 12, 17).  Defendant argues that Plaintiff's alleged possible engine failure due to excessive oil consumption is a "hypothetical scenario" and is thus non-cognizable as actual damages, and that Plaintiff's alleged "additional service visits and increased maintenance costs" have not been substantiated or alleged in sufficient detail. *Id.* at 8-9.  Finally, Defendant argues that Plaintiff's allegation that the value of the vehicle will drop upon future sale is "entirely hypothetical." *Id.* at 9.

Plaintiff counters that her allegations of actual damages, diminished value to the defective engine, increased maintenance costs, and increased risk of the engine failing are validly pled.  [ECF No. 36 at 7-8].  Plaintiff also adds that Plaintiff has adequately pled that punitive damages are warranted here, which, when combined with Plaintiff's actual and consequential damages puts Plaintiff over the $50,000 threshold.  [ECF No. 36 at 8-9 (citing cases holding punitive damages appropriate)].

Defendant replies first that diminution in value requires pleading both value of goods accepted, and value of goods had they been as warranted, and that Plaintiff has made no allegation regarding value of goods accepted with the alleged defect.  [ECF No. 37 at 1.].   Under *Iqbal*, Defendant argues that "a complaint is deficient where it pleads only 'naked assertions devoid of further factual enhancement.'" *Id.* at 1-2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Next Defendant argues that Plaintiff is not entitled to "incidental or consequential damages, which includes the out-of-pocket expenses alleged, because the warranties at issue expressly disclaim such damages." *Id.* at 2 (citing

*McKernan v. United Techs. Corp.*, 717 F. Supp. 60, 70 (D. Conn. 1989)).  Even if they could recover out-of-pocket expenses, they are only $2,100, "which is well below the $50,000 threshold."  *Id.*  Finally, Defendant replies that punitive damages, even if awardable, are limited to attorneys' fees, "which [Plaintiff] ha[s] also failed to plead with any particularity."  *Id.*

The Court finds that Plaintiff cannot meet the MMWA's $50,000 threshold for the following reasons.  First, assuming without deciding that out-of-pocket expenses would be recoverable even in the face of a warranty disclaimer, Plaintiff's alleged $2,100 in such expenses is well below the $50,000 threshold.  Second, Plaintiff has provided no details alleging *how* having to add extra oil between service appointments has increased maintenance costs over and above normal maintenance costs for this vehicle, apart from the cost of extra oil, and Plaintiff's allegation that excessive oil consumption *might* cause the engine to fail at some point in the future is speculative and therefore non-compensable.

Most importantly, Plaintiff's argument that punitive damages are awardable is incorrect.  In Connecticut, as in other jurisdictions, there is a high bar set for the awarding of punitive damages.  To clear that hurdle in a breach of contract/warranty case, the breaching party's conduct must be such that there exists "wanton and malicious injury, evil motive and violence, for punitive damages may be awarded only for outrageous conduct . . . ."  *L. F. Pace & Sons*, 9 Conn. App. at 48.

The cases where courts have found punitive damages awardable involved conduct far more malicious than any conduct of Defendant here.  For example, in *Makuch*, the actions of the Defendant car dealer were considered by the court to

10

warrant consideration of punitive damages because Plaintiff allegedly purchased a vehicle with damage from a prior accident, but the dealer told Plaintiff before sale the vehicle was a left-over brand-new model that was undamaged.  That was false, the damage was quite extensive, and the dealer made fraudulent statements to Plaintiff during repairs to Plaintiff's vehicle.  *See Makuch*, No. 3:12-cv-866-WWE, ECF No. 1 ¶¶ 13-21 (D. Conn. June 12, 2012).

In *Alexis v. PMM Enters. LLC*, No. 3:17-cv-1622 (MPS), 2018 U.S. Dist. LEXIS 184367 (D. Conn. Oct. 29, 2018), cited by Plaintiff, the Defendant car dealer lied to Plaintiff, as in *Makuch*, that the vehicle Plaintiff was about to purchase had no prior damage when the dealer knew or should have known, because the extensive damage was obvious to anyone with car repair skill, that the vehicle had been in an accident and was unsafe.  Thus, the court held that punitive damages were awardable.

In *Canaan Apothecary, LLC v. Maxi Drug, Inc.*, No. 3:12-cv-1571 (VLB), 2014 U.S. Dist. LEXIS 23461 (D. Conn. Feb. 25, 2014), also cited by Plaintiff, the Complaint alleged that Plaintiff and Defendant agreed to the sale of Plaintiff's pharmacy to Defendant, and that after the sale Plaintiff properly performed all required actions of the purchase and sale agreement, but Defendant intentionally breached and terminated the agreement in order to eliminate its only competition and to render the pharmacy "economically vulnerable at the least and very possibly non-viable and non-saleable."  *Id.* [ECF No. 1 (Complaint) ¶ 42)].  Under these allegations the Court said it would not strike a claim for punitive damages.  2014 U.S. Dist. LEXIS 23461, at *16-18.

11

In *L.F. Pace & Sons*, Defendant provided a bid bond to Plaintiff that allowed it to bid on a large public construction contract.  9 Conn. App. at 46-50.  After Plaintiff won the bid, Defendant refused to provide the required performance bond, which caused Plaintiff to lose the bid and eventually go out of business.  *Id.*  Under these facts, the Appellate Court concluded that "[w]e cannot hold that the jury's conclusion that the defendant acted in malicious and wilful disregard of the plaintiff's rights was unsupported by the evidence," upholding the award of punitive damages.  *Id.* at 50.

Defendant's conduct here is fundamentally different and distinguishable from that of the Defendants in the cases cited.  Plaintiff argues that Defendant concealed from Plaintiff that Defendant knew its vehicles' engines were defective "at the time of sale and during each subsequent instance where [Plaintiff] sought warranty repairs."  [ECF No. 36 at 8].  But Defendant was not the party that sold the vehicle to Plaintiff or serviced it, and Plaintiff's allegations fail in light of the allegations in the Complaint that Plaintiff purchased her vehicle on June 19, 2013, FAC ¶ 10, yet the oil consumption defect was a widely known "hot topic" in consumer forums as of 2011.  FAC ¶ 55.  It cannot have been outrageous or wanton and malicious for Defendant to not inform Plaintiff of something Plaintiff should have known about prior to purchase through the use of routine due diligence prior to making a major purchase.  Certainly nothing in the instant matter comes close to the car dealers in the cited cases lying to customers about vehicles' prior maintenance and accident histories.

Moreover, the "defect" Plaintiff complains about hardly, as in the cited car dealer cases, makes Plaintiff's vehicle undriveable or unsafe.  Plaintiff's only concrete allegation is that her vehicle suffers from excessive oil consumption that *might* be caused, as alleged by "[s]ome owners and enthusiasts," by "BMW's decision to place the N63's twin-turbochargers between the cylinder heads, and inside of the engine V, rather than outside of the engine V, away from sensitive components, where turbochargers are typically located."  [ECF No. 24 ¶ 48].

In sum, Plaintiff has not alleged any conduct on Defendant's part that might allow the Court to award punitive damages.

As to diminution in value, Defendant is correct that Plaintiff has failed to plead what the value of her vehicle is with the oil consumption defect.  More importantly, Plaintiff alleges that in June 2013 she paid $55,714.45 for her used 2010 BMW.  The oil consumption was commonly known when Plaintiff purchased her vehicle and thus the diminution in value should have been reflected in her purchase price.  If we assume that depreciation since June 2013 to the present has reduced the value of Plaintiff's vehicle further, and that the alleged defect has caused *some* decrease in value, there is simply no way that the decrease in value due to the engine defect alone could approach $47,900, or the MMWA $50,000 threshold minus the $2,100 in out-of-pocket expenses Plaintiff has alleged.

Plaintiffs relied heavily on an "aggregation" argument in their opposition to Defendant's Motion to Dismiss, [ECF No. 36 at 9], but obviously, now that Plaintiffs

Rosa and Christopher have dismissed their claims, that argument is unavailable to Plaintiff Johns-Pratt.[1]

## CONCLUSION

The Court holds that the MMWA $50,000 amount in controversy requirement is not met.  Given that, it is not possible for Plaintiff to meet the $75,000 diversity jurisdiction requirement under 28 U.S.C. § 1332(a).  The Court therefore finds that it lacks subject matter jurisdiction over any of Plaintiff's claims and GRANTS Defendant's Amended Motion to Dismiss.  The Clerk is directed to close this case.

IT IS SO ORDERED.

                                  _____/s/_____
                                  Hon. Vanessa L. Bryant
                                  United States District Judge

Dated at Hartford, Connecticut: April 21, 2020

---

[1] Plaintiff filed supplemental authority in which out-of-circuit district courts denied defendants' motions to dismiss and/or sever, [ECF Nos. 52, 54-56], but each of these cases is inapposite as each involves multiple-plaintiff claims that, in aggregation, could have met the $50,000 MMWA threshold, unlike here.